**IN THE UNITED STATES BANKRUPTCY COURT FOR
THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **IN RE:**<br><br>**ANGEL SANCHEZ MARTINEZ**<br><br><br>**Debtor(s)** | **CASE NO. 12-05200**<br>**Chapter 7**<br><br>**Adversary No. 12-00400** |
| **ANGEL SANCHEZ MARTINEZ**<br><br>**Plaintiff**<br>**vs.**<br><br>**AUTORIDAD DE AQUEDUCTOS Y ALCANTARILLAD OS, ET ALS.**<br><br><br>**Defendants** | <span style="color:red">**FILED & ENTERED ON 01/15/2014**</span> |

<u>**OPINION AND ORDER**</u>

Before this Court is Defendant's Motion Requesting Entry of Order [Dkt. No. 45], Plaintiff's Reply to Defendant's Motion Requesting Entry of Order [Dkt. No. 48], Defendant's Reply to Plaintiff's Response [Dkt. No. 60], Plaintiff's Sur-Reply to Defendant's Response [Dkt. No. 67], Plaintiff's Motion for Summary Judgment [Dkt. No. 46], Defendant's Opposition to Plaintiff's Motion for Summary Judgment [Dkt. No. 55], Plaintiff's Reply to Defendant's Opposition to Plaintiff's Motion for Summary Judgment [Dkt. No. 68], Plaintiff's Motion Submitting Documents with English Translations of Plaintiff's Motion for Summary Judgment [Dkt. No. 63] and

Defendant's Opposition to Plaintiff's Motion Submitting Documents with English Translations of Plaintiff's Motion for Summary Judgment [Dkt. No. 69]. For the reasons set forth below, Plaintiff's Motion for Summary Judgment is DENIED.

## I. Background

Debtor/Plaintiff, Angel Sanchez Martinez, filed a voluntary chapter 7 bankruptcy petition on June 30, 2012. On July 1, 2012, Noreen Wiscovitch Rentas assumed the duty of Chapter 7 Trustee. The Debtor's discharge Order was entered on October 16, 2012. Plaintiff filed this instant adversary proceeding against Creditor/Defendant Autoridad De Acueducto y Alcantarillados on June 30, 2012 for Defendant's willful violation of the automatic stay. Plaintiff's Motion for Summary Judgment and Defendant's Opposition followed.

## II. Summary Judgment Motion

The role of summary judgment is to look behind the facade of the pleadings and assay the parties' proof in order to determine whether a trial is required. Under Federal Rules of Civil Procedure, Rule 56(c), made applicable in bankruptcy by Federal Rules of Bankruptcy Procedure, Rule 7056, a summary judgment is available if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); Borges ex rel. S.M.B.W. v. Serrano-Isern, 605 F.3d 1, 4 (1st Cir. 2010). As to issues on which the movant, at trial, would be compelled to carry the burden of proof, it must identify those portions of the pleadings which it believes demonstrates that there is no genuine issue of material fact. In re Edgardo Ryan Rijos & Julia E. Cruz Nieves v. Banco Bilbao Vizcaya & Citibank, 263 B.R. 382, 388 (B.A.P. 1st Cir. 2001). A fact is deemed "material" if it potentially could affect the outcome of the suit. Borges, 605 F.3d at 5. Moreover, there will only be a "genuine" or "trial worthy" issue as to

such a "material fact," "if a reasonable fact-finder, examining the evidence and drawing all reasonable inferences helpful to the party resisting summary judgment, could resolve the dispute in that party's favor." Id. at 4. The court must view the evidence in the light most favorable to the nonmoving party.  Alt. Sys. Concepts, Inc. v. Synopsys, Inc., 374 F.3d 23, 26 (1st Cir. 2004). Therefore, summary judgment is "inappropriate if inferences are necessary for the judgment and those inferences are not mandated by the record." Rijos, 263 B.R. at 388.

Although this perspective is favorable to the nonmoving party, she still must demonstrate, "through submissions of evidentiary quality, that a trial worthy issue persists." Iverson v. City of Boston, 452 F.3d 94, 98 (1st Cir. 2006). Moreover, "[o]n issues where the nonmovant bears the ultimate burden of proof, [she] must present definite, competent evidence to rebut the motion." Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir.1991).These showings may not rest upon "conclusory allegations, improbable inferences, and unsupported speculation." Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir.1990). But, the evidence offered by the nonmoving party "cannot be merely colorable, but must be sufficiently probative to show differing versions of fact which justify a trial." Id. See also Horta v. Sullivan, 4 F.3d 2, 7-8 (1st Cir. 1993) (the materials attached to the motion for summary judgment must be admissible and usable at trial.) "The mere existence of a scintilla of evidence" in the nonmoving party's favor is insufficient to defeat summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); González-Pina v. Rodríguez, 407 F.3d 425, 431 (1st Cir. 2005).

In the summary judgment motion presently before the court, Plaintiff argues that there are no genuine issues as to any material facts and that therefore the moving party is entitled to judgment as a matter of law. Plaintiff contends the following facts to be undisputed:

(1)      On July 4th, 2012, this Court notified Defendant of Plaintiff's bankruptcy petition.

(2)     Defendant suspended Plaintiff's water service post petition, on or about July 1, 2012, but restored the service on October 2012.

(3)     Post petition Defendant sent collection letters to Plaintiff: (a) invoice number 001026529542, requiring payment for Plaintiff's account number 0000218398758, for the amount of $1,797.28. This collection letter included current charges, and arrears corresponding to the debt included in the bankruptcy petition. The alleged water service current charges were $170.14 and the total alleged amount owed was $1,797.28. (b) On or around August 12, 2012, Defendant sent one collection letter requiring payment and notifying the suspension of water service for Plaintiff's account number 000021839875.

(4)     On or around August 17, 2012, Attorney for Debtor, Pedro Valcarcel Bauza, wrote a letter to Ms. Leyda Class Balaguer, Defendant's Client Service Manager in Aguadilla, Puerto Rico. However, this letter was sent to Plaintiff with instructions for Plaintiff to deliver the letter personally to Defendant's offices at Aguadilla, Puerto Rico.

(5)     On or around September 19, 2012, Defendant sent one collection letter with invoice number 001027856239, requiring payment for Plaintiff's account number 0000218398758, for the amount of $4,392.60. The letter included current charges and arrears corresponding to the debt included in the bankruptcy petition. In the letter, the alleged current charges were $1,297.66, for a period where there was no water service for that account. The total alleged amount owed was $4,392.60 including the balance before the bankruptcy filing. This invoice also included an alleged previous balance of $3,094.94. In sum, Defendant attempted to charge two "current charges" of $1,297.66, for a total amount of $2,595.32, for the period where they accepted the water service was suspended.

(6)     On October 2nd, 2012, Plaintiff objected Invoice 001027856239 of September 19, 2012.

(7)     On or around October 15, 2012, Defendant sent one collection letter with invoice number 203380296680, requiring payment for Plaintiff's account number 0000218398758, for the amount of $3,113.44. This invoice included current charges and arrears corresponding to the debt included in the bankruptcy petition. The alleged water service current charges were $18.50 and the total alleged amount owed was $3,113.44.

(8)     On October 16th, 2012, the court discharged Plaintiff from his debts included in the bankruptcy petition.

(9)     Despite this Court's Discharge Order, Defendant continued its collection efforts. On November 1st, 2012, Defendant's representative, Leyda Class Balaguer, sent another collection letter notifying the results of an investigation regarding the operation status of the water meter in Debtor residence, mandating payment for account number 000021839875 for the amount of $4,411.10, and warning Plaintiff that, if the amount was not satisfied, the water service would be suspended.

(10)    On or around November 14, 2012, Defendant sent another collection letter with invoice number 001028999764, requiring payment for Plaintiff's account number 0000218398758, for the amount of $3,131.94. This invoice included current charges and arrears corresponding to the discharged debt. The water service current charges were $18.50 and the total alleged amount owed was $3,131.94.

(11)    On or around December 14, 2012, Defendant sent one collection letter with invoice number 203140306124, requiring payment for Plaintiff's account number 0000218398758, for the amount of $2,026.64. In this letter, alleged water service current charge was $72.94 and the total alleged amount owed was $2,026.64.

(12)    On or around January 13, 2013, Defendant sent another collection letter with invoice number starting with 0010301959, requiring payment for Plaintiff's account number 0000218398758, for the amount of $2,099.58. This invoice included the same current charges of December 2012, and arrears corresponding to the discharged debt, for a total amount of $2,099.58.

(13)    On or around February, 2013, Defendant sent one collection letter requiring payment for Plaintiff's account number 0000218398758. This invoice included current charges of $79.42, and arrears corresponding to the discharged debt, for a total amount of $2,179.00.

(14)    On February 19th, 2013, Defendant accepted the required deposit for a new account for the Plaintiff.

(15)    On or around March 16, 2013, Defendant sent another collection letter with invoice number 001031462863, requiring payment for Plaintiff's account number 0000218398758, for the amount of $2,104.00. This invoice included current charges of $79.42, and arrears corresponding to the discharged debt, for a total amount of $2,104.00.

(16)    Similar invoices were received on April, May and June 2013 (03880304698, 001032703104 and 203100373295). These invoices included current charges and accumulated balances corresponding to the discharged debt.

In light of the above facts, Plaintiff argues that Defendant violated Sections 362 and 524 of the

Bankruptcy Code.

Defendant disagrees with a significant number of Plaintiff's uncontested material facts

above. Mainly, however, Defendant opposes Plaintiff's arguments by pointing out that it did not

violate the automatic stay. It is alleged that whether Defendant correctly imposed various charges on

the Plaintiff is outside the scope of a violation of stay proceeding. Also, Defendant alleges that

suspension of Plaintiff's water service did not violate the automatic stay even though Defendant had received a notice of Plaintiff's bankruptcy petition because more than 20-days had expired after the filing of the petition without having received adequate assurance of payment as required under the Code. In fact,  Defendant suspended the service on August 7, 2012, 38 days from the filing of the petition, and Plaintiff paid Defendant adequate assurance on February 19, 2013, 234 days from the filing of the petition. Defendant points to Section 366 and argues that even though Section 366(a) precludes a utility from terminating or refusing to provide service to debtor solely on the basis of a debt that was owed prior to the commencement of case, Section 366(b) provides an exception to the automatic stay. This exception states that a utility can alter or discontinue service unless debtor, within 20 days of the petition, furnishes adequate assurance of future payment in the form of a deposit or other security. Citing to Weisel v. Dominion Peoples Gas Co. (In re Weisel), 428 B.R. 185 (Bankr.W.D.Pa.2010), Defendant argues that because Plaintiff failed to provide adequate assurance of payment within 20 days of the petition filing date, Plaintiff does not have the protection afforded under Sections 362 and 366(a). As such, Defendant was well within their right to terminate the water service under Section 366(b)'s exception for nonpayment. Moreover, even taking Plaintiff's allegation that it had made several attempts to provide for adequate assurance as true, Plaintiff has an affirmative duty to move the court in order to establish a reasonable amount to serve as adequate assurance under Section 366(b). Defendant therefore argues that there are two genuine issues of material fact to be resolved at trial: (1) whether the date of suspension occurred within 20 days from the filing of the petition, and (2) the precision of amounts and balances reflected on Defendant's invoices.

Plaintiff replies to the above by highlighting the following facts to be undisputed:

(1) The bankruptcy case filing was notified to Defendant on July 4th, 2012.

(2) The water service was suspended after that date. Defendant's letter dated August 12th, 2012, states that the water service was suspended on July 8th, 2012.

(3) That same letter sets forth that the reason for the suspension was that Defendant did not receive payment for services rendered. The letter also required payment of the balances owed as a condition of restitution.

(4) Each and every invoice from July 2012 until October 2012 included an amount for "Previous Balance" owed, which was also contained in the "Total Amount Due."

(5) Defendant's letter dated November 1st, 2012 requested payment of the balance owed and warned Plaintiff that Defendant may suspend the service again.

(6) Each and every Invoice from November 2012 until June 2013 included an amount for balances discharged by this Honorable Court.

Plaintiff concludes that the above uncontested facts, supported by the documents attached to Plaintiff's Motion for Summary Judgment, establish that there were several violations to the Stay Order between July 2012 and October 2012. Collection efforts made after October 16, 2012 were made in violation of this Court's Discharge Order.

## A.      Summary Judgment Standard

After reviewing the Plaintiff's arguments, and the relevant law, this Court concludes that there are genuine issues as to material facts and that the moving party is not entitled to judgment as a matter of law.  In a motion for summary judgment, in order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense *or* demonstrate that the nonmoving party does not have sufficient evidence of an essential element to carry its ultimate burden of persuasion at trial. Lopez v. Corporacion Azucarera de Puerto Rico, 938 F.2d 1510, 1516-17 (1st Cir. 1991); High Tech Gays v. Defense Indus. Sec. Clearance Office, 895 F.2d 563, 574 (9th Cir.1990). Regardless, in order to carry its ultimate burden of persuasion on the motion, the moving party must persuade the court that there is no genuine issue of material fact. Id. Therefore, the primary inquiry this Court must decide first is whether the

Plaintiff, as the moving party carried his initial burden of production and accordingly whether the Defendant, as the nonmoving party, had an obligation to produce evidence in response.

**B.      Section 366**

The merits of this instant case turn on Section 366 of the Bankruptcy Code. This Section lays out the rights and obligations of debtors as they seek to retain utility services after filing a bankruptcy petition. Section 366 provides:

> (a) Except as provided in subsection (b) of this section, a utility may not alter, refuse, or discontinue service to, or discriminate against, the trustee or the debtor solely on the basis of the commencement of a case under this title or that a debt owed by the debtor to such utility for service rendered before the order for relief was not paid when due.

> (b) Such utility may alter, refuse, or discontinue service if neither the trustee nor the debtor, within 20 days after the date of the order for relief, furnishes adequate assurance of payment, in the form of a deposit or other security, for service after such date. On request of a party in interest and after notice and a hearing, the court may order  reasonable modification of the amount of the deposit or other security necessary to provide adequate assurance of payment.

11 U.S.C. § 366.

By the operation of the Code, individual debtors and business debtors alike rely on the continuation of utility services throughout the pendant duration of their bankruptcy proceedings. This Court has previously stated that "[t]he term "utility" [in Section 366] is not defined in the Bankruptcy Code, but its ordinary meaning is "a service (such as light, power, or water) provided by a public utility." The term "public utility" is defined as "a business organization (as an electric company) performing a public service and subject to special governmental regulation." In re PMC Mktg. Corp., 501 B.R. 17, 24 (Bankr. D.P.R. 2013) (internal citations omitted).[1]

---

[1] The Court in In re NE Opco, Inc., 501 B.R. 233, 255 (Bankr.D.Del. 2013), in deciding the question of whether electricity is a good, criticized this Court's approach in In re PMC Mktg. Corp., 501 B.R. 17 (Bankr.D.P.R. 2013) answering the same question. This Court previously decided this question based on Section 366 of the bankruptcy code, which is relevant to this instant case, that because of the monopolistic relationship between the two parties, the utility company and the consumer, the electricity in that case cannot be considered as a good because it qualifies as a service

This distinctive power utility companies possess in light of debtors bankruptcy prompted Congress to establish a bankruptcy provision that would prevent the threat of termination from being used to collect pre-petition debts that would not otherwise force utility companies to provide services that they may never receive payment for. See e.g., Begley v. Philadelphia Elec. Co. (In re Begley), 760 F.2d 46, 49 (3d Cir.1985). Seeking to strike a balance between the general right of a creditor to refuse to do business with a debtor post-petition, and the debtor's need for utility service, Congress enacted Section 366 as part of the Bankruptcy Code of 1978. In re Jones, 369 B.R. 745, 748-50 (B.A.P. 1st Cir. 2007); In re Best Products Co., 203 B.R. 51, 53 (Bankr.E.D.Va.1996); see also Hanratty v. Philadelphia Elec. Co. (In re Hanratty), 907 F.2d 1418, 1424 (3d Cir.1990); see also In re Rivera, 12-05331 BKT, 2013 WL 5661477 (Bankr. D.P.R. Oct. 15, 2013); In re Lee Min Ho Chen, 482 B.R. 473, 481–82 (Bankr.D.P.R.2012) (discussing pillars of statutory interpretation.). Section 366(a) bans utility companies from altering, refusing, or discontinuing service to, or

under Section 366. The NE Opco, Inc. Court points out that because electricity can be bought and sold at the wholesale level, electricity could potentially be sold as a good and end as a service. However, consider this scientific reality as explained by the New York Independent System Operator ("NYISO") website [see http://www.nyiso.com/public/about_nyiso/understanding_the_markets/wholesale_retail/index.jsp (last visited Dec. 30, 2013)]:

> wholesale electricity is typically viewed as a service even within the wholesale to retail sale relationship. The relationship starts when a step-up transformer provides wholesale energy to a step-down transformer as a service, who in turn refines such high voltage energy into lower voltage electricity that is suitable for domestic and commercial use to individual consumers and homes.

Wholesale electricity, just like retail electricity providers, can effectively monopolize a given market. Accordingly, when a wholesale electricity company sells its unrefined service to a retail electricity company and such retail electricity company refines such service for consumer usage, these service-based relationships between the three different players, namely the wholesale provider, the retail provider, and the consumer, do not shift into goods based relationships. In other words, envision the following: a wholesale cell phone provider or a wholesale internet provider, upon their sale of such service to retail service providers, these retail service providers refine such service in order to tailor to their individualistic consumer preferences. This refinement does not morph a "service" into a "good." Moreover, a monopoly does not simply mean that a wholesale provider would potentially enter markets tailoring to individualistic preferences, it simply means that the wholesale provider could potentially enter new refined markets but may never do so. Regardless,

discriminating against, a trustee or a debtor solely on the grounds that the debtor has not paid its prepetition debts when due. This Section fundamentally reveals the Congressional concerns of the monopoly powers exercised by most utility companies and therefore mandates these companies to provide debtors with initial services post-commencement of a bankruptcy proceeding. See e.g., In re PMC Mktg. Corp., 501 B.R. 17, 23-24 (Bankr. D.P.R. 2013) (("[Section 366] gives debtors protection from a cut-off of service by a utility because of the filing of a bankruptcy case. This section is intended to cover utilities that have some special position with respect to the debtor, such as an electric company, gas supplier, or telephone company that is a monopoly in the area so that the debtor cannot easily obtain comparable service from another utility.") (quoting H.R.Rep. No. 95–595, at 350 (1977), as reprinted in 1978 U.S.C.C.A.N. 5963, 6306; S.Rep. No. 95–989, at 60 (1978), as reprinted in 1978 U.S.C.C.A.N. 5787, 5846.). Section 366(a)'s prohibition power, however, is not absolute. Rather, this prohibition is carefully balanced and is limited by Section 366(b)'s requirement that the trustee or debtor furnish "adequate assurance of payment" for post-petition service to the utility within 20 days after the filing of the petition. Case law reveals that Section 366(b) is often read as an exception to the automatic stay, thus permissibly allowing utility companies to alter, refuse or discontinue service for failure to provide adequate assurance of payment without recourse to the bankruptcy court. See In re Jones, 369 B.R. 745, 748-50 (B.A.P. 1st Cir. 2007); see e.g., Carter v. South County Water System (In re Carter), 133 B.R. 110, 112 (Bankr.N.D.Ohio 1991) (establishing, in a chapter 13 case that, the utility's right to terminate service for debtor's failure to tender adequate assurance of payment under Section 366(b) is "self-executing" and that "a formal proceeding by the utility is not required."); see also In re Penn Jersey Corp., 72

---

parties' relationships must be examined to ensure congressional intent is adequately protected and to guard against unwarranted judicial activism.

B.R. 981, 985 (Bankr.E.D.Pa.1987); In re Lease–A–Fleet, Inc., 131 B.R. 945, 949–50 (Bankr.E.D.Pa.1991); Marion Steel Co. v. Ohio Edison Co. (In re Marion Steel), 35 B.R. 188, 197 (Bankr.N.D.Ohio 1983). Debtors have a choice in exercising what the bankruptcy code would consider as adequate assurance. The choice comes in two forms: (1) a deposit with the utility or (2) another security. Both may be modified by an order of court on request of a party in interest after notice and a hearing.

After examining the relevant background, this Court finds that the ultimate question this summary judgment hinges on is not what the parties have brought to the attention of the court, but rather, the relevant inquiry here is whether the Debtor provided adequate assurance of payment in due time as mandated by the Code. If a debtor fails to provide adequate assurance of payment, a majority of the bankruptcy courts have rested on the conclusion that Section 366(b) grants utility companies the unilateral right to terminate service. Johnson v. Philadelphia Elec. Co., 80 B.R. 30, 31 (E.D.Pa.1987); MFS Telecom, Inc. v. Motorola, Inc. (In re Conxus Communs.,Inc.), 262 B.R. 893 (D.Del.2001); Robinson v. Michigan Consol. Gas Co., 918 F.2d 579, 588 (6th Cir.1990) (establishing that, in a chapter 7 case, where a debtor provides adequate assurance of payment, it is well established that the utility may still terminate service upon the debtor's failure to pay for post-petition services); Robinson v. Michigan Consol. Gas Co., 918 F.2d 579, 588 (6th Cir.1990); Penn Jersey Corp., 72 B.R. at 985; Allen v. Philadelphia Elec. Co. (In re Allen), 69 B.R. 867, 876 (Bankr.E.D.Pa.1987). These courts reasoned that "if failure to provide adequate assurance of payment is grounds for a utility to terminate service, then failure to make post-petition payments likewise allows for termination without requesting permission from the bankruptcy court." In re Jones, 369 B.R. 745, 749 (B.A.P. 1st Cir. 2007). As seen above, the majority has authorized utility companies to terminate services for post-petition delinquencies without obtaining relief from stay.

Another set of reasoning, leading to the same conclusion as above, is in line with the word "solely" found in Section 366(a), which some courts have found to imply that a utility may refuse to furnish services on other grounds, but not because of the commencement of the bankruptcy case nor because of prepetition debt. These courts reasoned that a utility company may exercise discretion to refuse service to any debtor for any reason that would validly constitute a ground for refusal if that debtor was not in bankruptcy, with the single exception of nonpayment for past services. Memphis Light, Gas & Water Division v. Farley, 135 B.R. 292, 294 (W.D.Tenn.1991); Hendrickson v. Philadelphia Gas Works, 672 F.Supp. 823, 834 (E.D.Pa.1987); Morris v. Detroit Edison (In re Morris), 66 B.R. 28, 29 (E.D.Mich.1986); In re Webb, 38 B.R. 541, 544 (Bankr.E.D.Pa.1984); Begley v. Philadelphia Elec. Co. (In re Begley), 760 F.2d 46, 49 (3d Cir.1985) ("[t]he restriction on termination in section 366(a) bars only those terminations which issue "solely on the basis" that a debt incurred prior to the bankruptcy order, was not paid when due."). Conclusively, as the above cases imply, Section 366(a) does not seem to bar utility companies from terminating service as a result of debtors' failure to pay post-petition amounts owed.

**III. Conclusion**

After a comprehensive review of the parties' arguments and the evidence presented, this Court cannot answer the relevant inquiry of whether the Debtor provided adequate assurance of payment in due time as mandated by the Bankruptcy Code. This question, therefore, must be answered in trial.

Further, Defendant's Motion Requesting Entry of Order is without merit. The court finds that the allegations contained in the Amended Complaint are specific, and the facts sustaining those allegations are complete and detailed sufficiently to defeat Defendant's Fed.R.Civ.P. 12(c) Motion.

WHEREFORE, IT IS ORDERED that Plaintiff's Motion for Summary Judgment and Defendant's Motion Requesting Entry of Order shall be, and they hereby are, DENIED. Clerk to schedule a final pre trial hearing.

SO ORDERED

San Juan, Puerto Rico, this 15TH day of January, 2014.

Brian K. Tester
U.S. Bankruptcy Judge