**IN THE UNITED STATES BANKRUPTCY COURT FOR
THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **IN RE:** | **CASE NO.  12-05200** |
| | **Chapter  7** |
| **ANGEL LUIS SANCHEZ MARTINEZ** | |
| | **Adversary No. 12-00400** |
| **Debtor(s)** | |
| **ANGEL LUIS SANCHEZ MARTINEZ** | |
| **Plaintiff** | |
| **vs.** | |
| **AUTORIDAD DE ACUEDUCTO Y ALCANTARILLADOS** | |
| **Defendant(s)** | **FILED & ENTERED ON 04/10/2015** |

**<u>OPINION & ORDER</u>**

Before the court is Plaintiff/Debtor's Motion for Partial Summary Judgment [Dkt. No. 103]; Defendant Autoridad de Acueductos y Alcantarillados' (hereinafter "PRASA") Motion for Partial Summary Judgment [Dkt. No. 109]; Defendant's Opposition[Dkt. No. 115]; Plaintiff's Opposition [Dkt. No. 121]; Plaintiff's Reply to Defendant's Opposition [Dkt. No. 127]; Defendant's Sur-Reply [Dkt. No. 133]; and Defendant's Reply to Plaintiff's Opposition [Dkt. No. 134]. For the reason's set forth below, Plaintiff's Motion for Partial Summary Judgment is GRANTED, and Defendant's Motion for Partial Summary Judgment is DENIED.

**I.      Factual Background**

On June 30, 2012, Debtor filed a voluntary chapter 7 Bankruptcy petition which included

PRASA in the creditors matrix. On July 1, 2012, Noreen Wiscovitch Rentas assumed the duty of Chapter 7 Trustee. The Certificate of Service generated by the court [Dkt. No. 6 in the legal case], shows that notice of the filing of the petition was sent by first class mail to PRASA on July 4th, 2012. PRASA was also listed in Schedule F with a debt of $1,627.14. Claim number 2-1 was filed on behalf of PRASA on November 28, 2012 in the amount of $2,550.90. No evidence was attached to the claim nor is the date on which the debt was incurred provided. On October 16, 2012, the Debtor's Discharge order was entered. On November 7, 2012, Debtor filed this instant adversary proceeding against PRASA alleging willful violation of the automatic stay pursuant to 11 U.S.C. § 362 and requesting attorneys fees and costs and $200,000.00 in compensatory and punitive damages.

The following facts pertaining to the events that occurred between the Plaintiff and PRASA are gleaned from the record. On or about July 14, 2012, PRASA sent invoice number 001026529542 to Plaintiff which detailed charges for water consumption up to June 8, 2012. Similar invoices were sent in August, September and October 2012, which included pre-petition balances. On August 12, 2012, PRASA sent a letter under the name of Leida V. Class Balaguer, Manager at PRASA'S Customer Service Office in Aguadilla, Puerto Rico. The letter notified the suspension of water service for Debtor's account number 000021839875 for lack of payment. The letter, as translated to the English language, states that the disconnection of water service took place on August 7, 2012. The invoice sent to Plaintiff dated July 14, 2012 showed a previous charge owing of $1,627.14 for account 00021839875 which debt was incurred on or before June 8, 2012, prior to the filing of the bankruptcy petition. The electronic program system used by PRASA to see the record of a client is called SAP.[1] One method used by a front office employee at PRASA's commercial offices to verify

---

[1]No information is provided in the record of the case to indicate what the letters "SAP" stand for, or if that is the actual name given to the electronic program.

the bankruptcy status of a client is through a notation on the clients record when viewed on SAP. This notation, which states whether the client is in bankruptcy, is not added to the SAP system at PRASA's commercial offices. The date of the first entry on SAP to show bankruptcy case number, 12-05200, was on December 11, 2012. Also, that same date was the first time Plaintiff's SAP record showed a $100.00 deposit requirement. By means of a letter, PRASA notifies clients who have filed a bankruptcy petition what the requirements and deadlines are to pay a security deposit in order to avoid suspension of their water service. This letter provides the specific dollar amount of the security deposit needed. PRASA never sent such a letter to Plaintiff after the filing of his bankruptcy petition. Plaintiff's deposit in the amount of $75.00 was processed on February 19, 2013.

## II.     Standard of Review

We begin with bedrock: a court may grant summary judgment only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(a). "A fact is material if it carries with it the potential to affect the outcome of the suit under the applicable law." Newman v. Advanced Tech. Innovation Corp., 749 F.3d 33, 36 (1st Cir. 2014) (quoting One Nat'l Bank v. Antonellis, 80 F.3d 606, 608 (1st Cir. 1996)). A genuine issue of material fact "must be built on a solid foundation -- a foundation constructed from materials of evidentiary quality." Nieves-Romero v. United States, 715 F.3d 375, 378 (1st Cir. 2013). "[C]onclusory allegations, empty rhetoric, unsupported speculation, or evidence which, in the aggregate, is less than significantly probative will not suffice to ward off a properly supported summary judgment motion." Id. (quoting Rogan v. City of Bos., 267 F.3d 24, 27 (1st Cir. 2001)).

## III.    Legal Analysis

Before moving on to the relevant legal issues, the court will first tackle three procedural matters which have been repeatedly tossed out by PRASA like 'red herrings' in what may be an

attempt to mislead this Court. First up is the question of this Court's jurisdiction to hear this matter. Relying on 28 U.S.C. § 157(b)(2)(O), PRASA argues that Plaintiff's claim can be boiled down to a personal injury tort which is outside the scope of authority of this court. The main issues before the court are: (1) whether PRASA willfully violated the automatic stay protection afforded under 11 U.S.C. § 362; and (2) whether PRASA willfully violated the Debtor's discharge as per 11 U.S.C. § 524. "The automatic stay imposes on non-debtor parties an affirmative duty of compliance." Otero López v. Dep't of Treasury of P.R., 492 B.R. 595, 607 (Bankr.D.P.R.2013), citing Sternberg v. Johnston, 595 F.3d 937, 943 (9th Cir.2010). To ensure compliance, Section 362(k) of the Bankruptcy Code provides the necessary means to redress violations of the stay: "an individual injured by a willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(k)(1). In short, § 362(k) is "a tool to enforce the automatic stay and provide individual debtors with a recourse from violations." In re Panek, 402 B.R. 71, 76 (Bankr.D.Mass.2009). This Court has jurisdiction over the instant adversary proceeding pursuant to 28 U.S.C. §§ 157(a) and 1334(b) and Fed.R.Bankr.P. 7001(1). Moreover, a willful violation claim under 11 U.S.C. § 362 " must be brought in the bankruptcy court, rather than in the district court, which only has appellate jurisdiction over bankruptcy cases." Eastern Equipment & Services Corp. v. Factory Point National Bank, Bennington, 236 F.3d 117, 121 (2ndCir. 2001). Also see Davis v. Courington, 177 B.R. 907, 912 (9th Cir. BAP 1995) ("The bankruptcy court ha[s] subject-matter jurisdiction over all claims alleging willful violation of the automatic stay."); Halas v. Platek, 239 B.R. 784, 792 (N.D.Ill.1999) ("[A] Section 362[k] request for sanctions is within the exclusive jurisdiction of the bankruptcy court under § 1334(a)"). [2] Regardless of how PRASA defines Plaintiff's claims, the court's jurisdiction

---

[2] Section 101(52) of the Bankruptcy Code includes Puerto Rico as a "state" for bankruptcy purposes, "except for the

over this proceeding is manifest.

Second, PRASA raises multiple objections to the evidence used by Plaintiff to support its factual allegations in its Motion for Summary Judgment and subsequent filings. In sum, PRASA maintains that the bulk of Plaintiff's cited evidence is inadmissible and requests the court to strike it from the record pursuant to Local Rule 56(b). In so doing, PRASA either distorts or misinterprets the Local Rules of this Court, the Local Rules of the District Court and the Rules of Evidence. Plaintiff addresses these objections at length in his Reply [Dkt. No. 127]. For purposes of judicial economy, the court adopts the legal conclusions stated in said Reply pertaining to the adequacy of Plaintiff's evidence and sustains their admissibility for purposes of this summary judgment.

Third, is PRASA's insistence on arguing legal issues dealing with damages and sovereign immunity. In relevant part, a summary judgment is a procedural vehicle used to determine a party's liability. Once the court makes that determination the issue of damages is addressed either through a hearing or through writings. All arguments made by PRASA at this juncture regarding their sovereign immunity are premature and will not be considered by the court.

As stated at the outset of the analysis, the two issues before the court are: (1) whether PRASA willfully violated the automatic stay protection afforded under 11 U.S.C. § 362; and (2) whether PRASA willfully violated the Debtor's discharge as per 11 U.S.C. § 524.

**Sections 362 and 366**

11 U.S.C. § 362(a)(1) and (a)(6) of the Bankruptcy Code provide that upon filing for bankruptcy, a debtor is immediately protected by an automatic stay that prohibits the continuation or other action or proceeding against the debtor that was or could have been commenced before the bankruptcy petition. The same sections prohibit creditors to recover a claim against the debtor that

purpose of defining who may be a debtor under [its] Chapter 9." 11 U.S.C. § 101(52).

arose before the commencement of the case under the bankruptcy code, and any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case.

Defendant alleges that suspension of Plaintiff's water service did not violate the automatic stay even though Defendant had received notice of Plaintiff's bankruptcy petition because more than 20-days had expired after the filing of the petition without having received adequate assurance of payment as required under the Code. In fact, Defendant suspended the service on August 7, 2012, 38 days from the filing of the petition, and Plaintiff paid Defendant adequate assurance on February 19, 2013, 234 days from the filing of the petition. Defendant points to Section 366 of the Code and argues that even though Section 366(a) precludes a utility from terminating or refusing to provide service to debtor solely on the basis of a debt that was owed prior to the commencement of the case, Section 366(b) provides an exception to the automatic stay. This exception states that a utility can alter or discontinue service unless debtor, within 20 days of the petition, furnishes adequate assurance of future payment in the form of a deposit or other security.

The merits of this argument turn on Section 366 of the Bankruptcy Code. This Section lays out the rights and obligations of debtors as they seek to retain utility services after filing a bankruptcy petition. Section 366 provides:

> (a) Except as provided in subsection (b) of this section, a utility may not alter, refuse, or discontinue service to, or discriminate against, the trustee or the debtor solely on the basis of the commencement of a case under this title or that a debt owed by the debtor to such utility for service rendered before the order for relief was not paid when due.

> (b) Such utility may alter, refuse, or discontinue service if neither the trustee nor the debtor, within 20 days after the date of the order for relief, furnishes adequate assurance of payment, in the form of a deposit or other security, for service after such date. On request of a party in interest and after notice and a hearing, the court may order reasonable modification of the amount of the deposit or other security necessary to provide adequate assurance of payment.

11 U.S.C. § 366.

Defendant's posture is not borne out by the facts in this case. Plaintiff has demonstrated that PRASA denied accepting a new deposit as evidence of adequate assurance following the filing of the bankruptcy case because pre petition arrears were owed. It is clear that the SAP system used by PRASA did not indicate that the Plaintiff was in bankruptcy until December 11, 2012. Also, that same date was the first time Plaintiff's SAP record showed a $100.00 deposit requirement. It was not until February 19, 2013 that PRASA accepted the required deposit. Plaintiff could not request a modification of the adequate assurance as allowed by § 366(b) because PRASA did not acknowledge his bankruptcy. Instead, PRASA focused on and pursued Plaintiff for his pre petition arrears without regard to the protections afforded Debtor under the automatic stay provisions of the Code.

**Sections 727 and 524**

In a chapter 7 case, with certain exceptions not relevant to this instant case, "[t]he [bankruptcy] court shall grant the debtor a discharge." A discharge is a permanent order that prohibits and prevents creditors from collecting on specific debts. A discharge also prohibits creditors from communicating with debtors regarding the discharged debt. Additionally, the Code, at 11 U.S.C. § 524(a)(2), prescribes that a discharge of debt "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt [discharged] as a personal liability of the debtor, whether or not [the] discharge of such debt is waived[.]" Under 11 U.S.C. § 524, a bankruptcy court's discharge injunction power is enforced by Section 105. See Pratt v. General Motors Acceptance Corp., 462 F.3d 14, 21 (1st Cir. 2006); Bessette v. Avco Fin. Svcs., 230 F.3d 439, 444 (1stCir. 2000); see also In re Schlichtmann, 375 B.R. 41, 94 (Bankr.D.Mass.2007); In re Collins, 474 B.R. 317, 320 (Bankr. D.Me. 2012). Therefore, a creditor violates the discharge injunction when it "(1) commits an act that violates the discharge injunction with the general intent to commit the act and (2) acts with

knowledge of the discharge order." In re Collins, 474 B.R. at 320 (citing In re Schlichtmann, 375 B.R. at 96).

Like the order for relief when the case was initially filed, the discharge order issued by the court on October 16, 2012 was duly notified to PRASA. The factual record shows that collection letters continued to be sent to the Plaintiff in attempts to collect the discharged pre petition debt.

**IV.     Conclusion**

The court concludes that the above uncontested facts, supported by the documents attached to Plaintiff's Motion for Summary Judgment, establish that there were several violations to the Stay Order between July 2012 and October 2012. Collection efforts made by PRASA after October 16, 2012, were made in violation of this Court's Discharge Order.

WHEREFORE, IT IS ORDERED that Plaintiff's Motion for Partial Summary Judgment shall be, and it hereby is GRANTED, and Defendant's Motion for Partial Summary Judgment shall be, and it hereby is DENIED. The Clerk shall schedule a trial on the damages requested in the Complaint and enter Partial Judgment in accordance with the findings in this Opinion and Order.

SO ORDERED

San Juan, Puerto Rico, this 10th day of April, 2015.

Brian K. Tester
U.S. Bankruptcy Judge